UNITED STATES of America

v.

John J. KEARNEY, Defendant.

No. 77 Cr. 0245.

United States District Court,
S. D. New York.

July 28, 1977.

Griffin B. Bell, Atty. Gen. of the U. S., by Stephen Horn, Atty., U. S. Dept. of Justice, Washington, D. C., for the Government.

Buckley & Santos, Hartford, Conn., for defendant, by Hubert J. Santos, Hartford, Conn., of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Defendant John Kearney is a former agent of the Federal Bureau of Investigation who is charged with obstruction of correspondence and interception of wire communications in violation of 18 U.S.C. §§ 1702 and 2511, and with conspiracy to commit those offenses. He has now moved for an order permitting the discovery and inspection of certain documents and materials purportedly in the hands of the government, and for a bill of particulars. At a pre-trial conference held before me on June 24, 1977 the parties indicated their desire to informally resolve the matter relating to the bill of particulars, so I will not now address that issue.

The discovery requests cover several categories of information: general requests, requests designed to support defenses based on "national security" and "mistake of law and fact," and requests in aid of a motion to dismiss the indictment on the grounds of pre-indictment delay, selective prosecution, grand jury disclosure, and the statute of limitations.

## GENERAL REQUESTS

I have already ordered the government to turn over witness lists (Item 1) pursuant to the balancing test of *United States v. Cannone*, 528 F.2d 296 (2d Cir. 1975). Additionally, the government has either consented to disclose or is apparently not in possession of Items 2, 5, 6, 7, 10, 11, 12, 13, 14, 16 and 18; and defendant has acknowledged receipt of his grand jury testimony (Item 4) as well as documents obtained from him which the government intends to introduce at trial (Item 9).

The government has objected to the production of grand jury testimony of co-conspirators (Item 4), statements of co-conspirators (Item 8), and documents obtained from co-conspirators (Item 9), as well as material seized from F.B.I. offices in Washington and New York on or about August 19, 1976 (Item 15). It does, however, acknowledge its responsibility to produce any material intended for use at trial, or any exculpatory documents under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). While the grand jury testimony of co-conspirators may subsequently be available to defendant pursuant to 18 U.S.C. § 3500, neither that testimony nor co-conspirators' statements will be ordered produced at this time. *United States v. Percevault*, 490 F.2d 126 (2d Cir. 1974). With regard to documents obtained from or belonging to co-conspirators and those seized on August 19, 1976, defendant argues that disclosure is necessary in order to determine if he was involved in the preparation of this material. If defendant had an interest in such documents, disclosure is proper. Consequently, as I indicated at the pre-trial conference on June 24, 1977, the government is directed to produce any documents or reports of other F.B.I. agents which defendant signed or approved, including those which facially indicate the approval of defendant's superiors.

■ Defendant also seeks the written and recorded statements of government witnesses (Item 1) and the names, addresses and statements of persons with knowledge of the case who are presently considered non-witnesses (Item 3). The witness statements fall within 18 U.S.C. § 3500, and will not be disclosed at this time. *United States v. Percevault, supra*; Rule 16(a)(2), F.R. Crim.P. Disclosure of non-witnesses and their statements would appear discoverable as tangible property subject to a showing of materiality, Rule 16(a)(1)(C). *See United States v. Marshak*, 364 F.Supp. 1005, 1007–08 (S.D.N.Y.1973). Defendant's blanket demand and general justification—that this material may supply the defense with "background material on the issues of authorization, chain of command authority, traditional methods of investigation, and other important matters"—fails to constitute a showing of the type required. However, to the extent that any such statements are contained in requests granted under the categories discussed *infra*, they must be produced.

■ Included in Item 17, seeking disclosure of all arguably favorable or exculpatory evidence, is "information which may be or become of benefit to defendant in preparing the merits of his defense at trial." The contours of *Brady*, however, do not extend this far, and to the extent such material is requested, the request is denied. *See United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *United States v. Ruggiero*, 472 F.2d 599 (2d Cir.), *cert. denied*, 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973). The government has agreed that all exculpatory material and all material tending to impeach a government witness will be produced.

The balance of Item 17 is concerned with the disclosure of material tending to support defendant's motion to dismiss the indictment and various defenses. Like Items 19, 20 and 21 which seek disclosure of membership lists of the Weathermen organization, the relationship of persons referred to in the indictment to the Weathermen, and a statement of criminal acts committed by the Weathermen so as to develop a national security defense, this portion of Item 17 is implicitly contained in the remaining requests which will be considered and ruled upon below.

## DEFENSES

Items 22 through 27 seek material in support of a defense based on "national security"; Items 28 through 35 request disclosure of information aimed at the establishment of a "mistake of law and fact" defense. Based on defendant's factual proffer outlining these defenses,[1] the government contends that they are unavailable to defendant as a matter of law, and that the requests, therefore, should be denied. Bearing in mind that the instant motion is one for discovery of materials purportedly relevant to the development of these defenses, and not one aimed at a determination of the merits of already established defenses, I turn to a consideration of the requests.

## THE NATIONAL SECURITY DEFENSE

The acts charged on this indictment involve the use of warrantless wiretaps and unauthorized mail openings in connection with defendant's F.B.I. investigative responsibility for the location and apprehension of fugitives associated with the organization known as the Weathermen. The broad discovery into the national security aspects of this case, including the disclosure of information designed to establish a foreign influence on the Weathermen, is sought to support the view that this organization posed a national security threat constitutionally justifying the use of these warrantless intrusive techniques.

In *United States v. Ehrlichman*, 546 F.2d 910 (D.C. Cir. 1976), *cert. denied* 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 570 (1977), the Court of Appeals for the District of Columbia Circuit explored and defined the

---

1. Defendant's reply papers, containing his proffer, and the government's supplemental response thereto, are sealed at the request of the parties.

contours of the so-called "national security" defense in cases purportedly involving foreign agents or collaboration with foreign powers. That issue had been specifically left open by the Supreme Court in *United States v. United States District Court*, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) in requiring a warrant in domestic electronic surveillance cases. This defense is apparently rooted in the President's constitutional power over the exercise of foreign affairs, a power acknowledged, yet left undefined and undisturbed by Congress in enacting the Federal wiretapping statute. See Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2511(3) (Title III).[2] The *Ehrlichman* court, in affirming that the warrantless break-in of Dr. Lewis Fielding's office in search of records of his patient, Daniel Ellsberg, was violative of his Fourth Amendment rights, held that if there exists such a "national security" exemption to the Fourth Amendment's warrant requirement in cases involving foreign agents or collaborators, this exemption can only be invoked, and a warrantless search conducted, with the express authorization of the President or Attorney General.

Indeed, any less of a requirement would give any minor yet zealous official a free hand to disregard the vital privacy interests which lie at the core of Fourth Amendment protection simply by conjuring up the "national security" and "foreign influence" spectre. As the *Ehrlichman* court noted, "The danger of leaving delicate decisions of propriety and probable cause to those actually assigned to ferret out 'national securi-

ty' information is patent . . ." 546 F.2d at 926.

That the instant case involves wiretapping rather than a physical trespassory intrusive technique should not change the result. See *United States v. Barker*, 546 F.2d 940, 953 n.40 (D.C. Cir. 1976). Those cases which, in the wake of *United States v. United States District Court, supra,* have upheld warrantless wiretapping when dealing with foreign connections in the name of "national security" have involved wiretaps which were, in fact, authorized by the Attorney General pursuant to powers delegated to him by the President. *United States v. Butenko,* 494 F.2d 593 (3rd Cir. 1974), *cert. denied* 419 U.S. 881, 95 S.Ct. 147, 42 L.Ed.2d 121 (1974); *United States v. Brown,* 484 F.2d 418 (5th Cir. 1973), *cert. denied* 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974). I am aware of no case which has upheld a warrantless intrusion not so authorized. That the Supreme Court has demonstrated its concern for fixing responsibility for authorizing wiretaps in no lower ranked an official than the Attorney General is evidenced by *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), in which a court-ordered wiretap was ruled invalid since the application therefor was approved by an assistant to the Attorney General rather than the Attorney General personally, as required by Title III. This concern indicates the undesirability of upholding a wiretap which is neither court-ordered nor the subject of Executive or Attorney General approval.

---

**2.** The so-called "national security" proviso to Title III, as contained in 18 U.S.C. § 2511(3), provides:

Nothing contained in this chapter (Title III) or in section 605 of the Communications Act of 1934 * * * shall limit the constitutional power of the President to take such measures as he deems necessary to protect the Nation against actual or potential attack or other hostile acts of a foreign power, to obtain foreign intelligence information deemed essential to the security of the United States, or to protect national security information against foreign intelligence activities. Nor shall anything contained in this chapter be

deemed to limit the constitutional power of the President to take such measures as he deems necessary to protect the United States against overthrow of the Government by force or other unlawful means, or against any other clear and present danger to the structure or existence of the Government. The contents of any wire or oral communication intercepted by authority of the President in the exercise of the foregoing powers may be received in evidence in any trial hearing, or other proceeding only where such interception was reasonable, and shall not be otherwise used or disclosed except as is necessary to implement that power.

■ Defendant contends that he should nevertheless be entitled to the requested discovery bearing on a "national security" defense so as to demonstrate his good faith and reasonable belief that the acts alleged were constitutional. For this proposition he relies on *Zweibon v. Mitchell*, 170 U.S.App. D.C. 1, 516 F.2d 594 (1975) (en banc), a civil case in which damages for warrantless surveillances, held to be invalid, were sought. *Zweibon* recognized that a good faith and reasonable belief on the part of Executive officials that it was constitutional to install warrantless wiretaps in the name of national security under the President's foreign affairs power is a defense to liability under Title III. *See* 18 U.S.C. § 2520. However, even were I to adopt *Zweibon*'s formulation, it would be inapplicable in this case unless the wiretaps were in fact authorized by the Attorney General, as they were in *Zweibon*, or by the President. Because a defense based on national security requires this explicit Executive approval, no good faith belief in the constitutionality of an intrusion which is not so authorized can excuse such a surveillance under this theory. This is not to say, however, that a good faith and reasonable belief of the type proffered would not support a defense based on "mistake of law and fact." That contention is dealt with below.

■ Thus, whatever constitutional power lies without the scope of Title III and is invested in the Chief Executive to authorize warrantless surveillance for the sale of national security, a necessary prerequisite to the administration of this power is the express approval by the President or the Attorney General. The government has represented that no such authorization exists in this case. Nevertheless, at the pretrial conference, the government was directed to conduct a diligent search for any such approval, as requested in Item 27. Unless and until it is clear that Executive authorization is extant—and defendant does not seem to press the fact of its existence—the "national security" defense would be unavailable in this case, and the discovery requests aimed at its development, beyond that already ordered, are denied.

## THE MISTAKE OF LAW AND FACT DEFENSE

The "mistake of law and fact" defense urged is one directed at negating any element of criminal intent on defendant's part. It is based on the exception recognized in *United States v. Barker*, 546 F.2d 940 (D.C. Cir. 1976), to the well settled precept that a mistake of law is no excuse. *See United States v. International Minerals and Chemical Corporation*, 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971). In *Barker*, defendants Barker and Martinez, members of the "Special Investigation" unit which burglarized Dr. Fielding's office, sought a reversal of their conspiracy convictions for the refusal of the District Court to allow them a defense of an absence of *mens rea* based upon their good faith reasonable reliance on the apparent authority of E. Howard Hunt to engage in the break-in. The Court of Appeals for the District of Columbia Circuit, in a *per curiam* decision, reversed their convictions; however, Judges Wilkey and Merhige, forming the majority, filed separate opinions stating their differing formulations of the allowable exception.

According to Judge Wilkey, this defense would be available to the defendants if they could demonstrate "*both* (1) *facts* justifying their reasonable reliance on Hunt's apparent authority and (2) *a legal theory* on which to base a reasonable belief that Hunt possessed such authority." *Id.* at 949 (emphasis in original). For Judge Wilkey, the issue was not whether there exists a constitutional Chief Executive warrant where those under investigation are agents or collaborators with foreign nations (*see* discussion in *United States v. Ehrlichman, supra* at 927–28) but rather

. . . whether, given undisputed facts as known and represented to them, it was reasonable in 1971 for Barker and Martinez to act on the assumption that

authority had been validly conferred on their immediate supervisor.

*United States v. Barker, supra* at 950.

In Judge Merhige's view, bottomed principally on the Model Penal Code,[3] the defense is a more limited one, available

. . . if, and only if, an individual (1) reasonably, on the basis of an objective standard, (2) relies on a (3) conclusion or statement of law (4) issued by an official charged with interpretation, administration and/or enforcement responsibilities in the relevant legal field. The first three issues are of course of a factual nature that may be submitted to a jury; the fourth is a question of law as it deals with interpretations of the parameters of legal authority.

*Id.* at 955.

Kearney contends that his proffer meets the standards of both formulations. To satisfy the Wilkey test he initially must show facts indicating his reasonable reliance on the apparent authority of his superior and F.B.I. headquarters personnel to approve the alleged warrantless surveillance in issue. To this end he proffers facts which arguably indicate a historical acceptance of these techniques within the Bureau and his involvement with what he believes to be a national security operation lawfully authorized by that agency. *See United States v. Barker, supra* at 949. That the government may view the existence of certain facts as militating against these beliefs is an argument to be made to the jury in the event that this defense is subsequently determined by this Court to be submitted to the jury; but it is not presently a ground to deny the availability of discovery to defendant at this time should the second prong of the Wilkey formulation be met.

█ In support of the availability of a legal theory on which to base a reasonable belief that his superiors possessed such authority, Kearney contends that the Weathermen posed a national security threat justifying the warrantless surveillance. It is important to note that under the Wilkey formulation, it is not the correctness of the legal theory that is relevant, but the reasonableness at the time of the acts charged "of acting consonant with it." *Id.* at 952. Thus, regardless of whether the President or Attorney General expressly approved the warrantless surveillance in issue (see discussion of national security defense, *supra*), if it was reasonable to conclude that the Executive had the constitutional power to authorize warrantless surveillance in a case involving foreign agents or collaborators, pursuant to which F.B.I. higher-ups could have been authorized to act, then, seemingly, this prong of the Wilkey test is met. Since no case has yet held that the Executive does not have this power, and the Executive Branch has for a long time been operating under the view that this power exists, it cannot be said, regardless of whether or not I subscribe to this view, that as a matter of law this prong of the Wilkey test has not been met.

█ Nor will I uncategorically find, at this early date and for the purposes of this motion, that on the basis of defendant's proffer the view of the defense expounded by Judge Merhige which would exonerate an individual who reasonably relied on an official's mistaken statement of the law, is unavailable. The government contends that because there is no legal theory under which defendant's superior and F.B.I. headquarters personnel could have validly authorized the warrantless surveillance, there exists no legal authority in these officials upon whom defendant purports to have relied, and that, in any event, these superiors

**3.** The Model Penal Code states the defense in the following manner:

A belief that conduct does not legally constitute an offense is a defense to a prosecution for that offense based upon such conduct when: . . . (b) he acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in (i) a statute or other enactment; (ii) a judicial decision, opinion or judgment; (iii) an administrative order or grant of permission; or (iv) an official interpretation of the public officer or body charged by law with responsibility for the interpretation, administration or enforcement of the law defining the offense. § 2.04(3)(b).

are not appropriate official sources upon whose opinion defendant may have reasonably relied. Only the latter contention is meaningful in this context.[4] The F.B.I. has been designated by Presidential directives to take charge of investigations relating to subversive activities and the like, and the Bureau director is responsible for carrying out this responsibility. *See* 28 C.F.R. § 0.85 (1976). It is thus an agency charged with enforcement responsibility in connection with the relevant law in issue, and its director and his immediate subordinates arguably are officials in whom reliance may properly be placed. In *Barker*, Judge Merhige stated:

> The Executive Branch of the United States Government is vested with substantive responsibilities in the field of national security, and decisions of its officials on the extent of their legal authority deserve some deference from the public.

*Id.* at 957. This quote applies with equal force here.

■ That Kearney was an F.B.I. agent himself, and not simply a "member of the public", does not preclude him from relying on the opinions, if any, of these officials as to the relevant law. It is, instead, a factor to be weighed by the jury, if this defense is later deemed by this court to be submitted to the jury, as bearing on the reasonableness of his reliance. Of course, the question of whether or not he so relied, as well as whether such an opinion was obtained, are likewise questions for the jury. But at this juncture, defendant's proffer indicates that he has at least a claim to this defense which may be developed by relevant discovery.

■ The government has not individually opposed the items requested in support of a defense based on "mistake of law and fact," resting instead on a broad-based attack on its initial availability in this case. Yet certain of the information requested appears burdensome or superfluous to the development of the defense, and disclosure will be accordingly limited.

Item 28, seeking the names and addresses of all executives and agents of the F.B.I. stationed in Washington during 1970 through 1972, as well as various other information with regard to these people is granted to the extent reflected in request 28(a); that is, it is limited to those persons who had contact with defendant or Squad 47. This information will be sealed. Item 29, seeking material indicating that defendant's superiors knew and/or approved warrantless techniques in the investigation of the Weathermen, is also granted within limits—the requested interviews of and correspondence by former Deputy Director Sullivan which will be produced are limited to the Weathermen investigation. Item 30 is an interrogatory and, as such, falls without the scope of Rule 16(a)(1)(C) which is limited to documents and tangible objects. *See United States v. Conder*, 423 F.2d 904 (6th Cir.) *cert. denied* 400 U.S. 958, 91 S.Ct. 357, 27 L.Ed.2d 267 (1970). It is accordingly denied. Since I fail to see the relevance of a list of names and addresses of all attorneys and investigators of the Internal Security Division of the Department of Justice, and the other information requested in Item 31, this request is also denied. Item 32, dealing with a memo from Director Hoover in 1967 directing agents to halt

---

4. In this connection, the government has indicated that it is willing to present evidence at a hearing on this motion to demonstrate that all policy statements by the Justice Department and F.B.I. support the lack of legal authority in defendant's supervisors to approve warrantless national security wiretaps, and that defendant knew and previously used the well-known procedures for obtaining valid Attorney General authorization.

Assuming the truth of these assertions, the former begs the question, since it is not whether these supervisors actually possessed the authority to authorize the surveillance in issue that is relevant to the Merhige formulation, but rather whether these persons were officials "charged with interpretation, administration, and/or enforcement responsibilities" with respect to the relevant law so that any conclusion or "statement" thereof could have been reasonably relied on by Kearney. The latter proposition, even if true, would go to the question of reasonableness of the reliance, and should be weighed by the factfinder along with other evidence of reasonableness. Consequently, a hearing for this purpose is unnecessary.

warrantless entries, is granted. Item 33, requesting all records revealing that F.B.I. agents engaged in warrantless surveillance techniques "during this century," and Items 34 and 35, requesting all agent-prepared reports to federal prosecutors and Washington Bureau Headquarters—issued communications to the Department of Justice "in this century" indicating the employment of this practice, are granted but will be limited to the time period spanning defendant's employment with the F.B.I.

## MOTION TO DISMISS

The remaining discovery is sought in aid of preparation of a motion to dismiss the indictment based on various grounds. Items 36 through 40 are concerned with pre-indictment delay; Items 41 through 43, selective prosecution; Item 44, grand jury disclosure; and Item 45, expiration of the statute of limitations.

### PRE–INDICTMENT DELAY

██ The indictment in this case was returned on April 7, 1977, four years and ten months after defendant's purported retirement from the F.B.I. in June, 1972. The acts charged therein span the period of late 1970 through June 1972. Notwithstanding that the reach of the stated time period facially satisfies the statute of limitations (but see discussion of statute of limitations, *infra*,) a due process challenge will lie under certain circumstances in the event of oppressive delay between the commission of the crime charged and the filing of the indictment. The Supreme Court in *United States v. Lovasco*, —— U.S. ——, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) reiterated its position in *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), that a showing of actual prejudice as a result of a lengthy pre-indictment delay concretizes a due process claim, triggering an inquiry into the reasons for the delay and prejudice to the defendant.

██ The government objects to the disclosure of Items 36 through 40, which are interrogations designed to elicit the date and scope of the government's knowledge of defendant's activities and its election to neither investigate nor prosecute, as bearing on the reason for the pre-indictment delay. As interrogatories, these requests are not discoverable under Rule 16. Should defendant make the appropriate showing of prejudice on his motion to dismiss which would entitle him to a hearing on this issue, he will have ample opportunity to pursue the line of questioning outlined in these items directly with the witnesses.

To allow defendant to develop his claim of actual prejudice, which presently is alleged as a result of loss of memory and death of crucial witnesses, I ordered the government at the pre-trial conference to produce information as to certain persons listed in defendant's request. This direction, of course, does not constitute any view on the merits of his contention.

### SELECTIVE PROSECUTION

██ Items 41 through 43 are primarily in interrogatory form and seek Department of Justice and government knowledge of warrantless mail openings, entries or electronic surveillance by C.I.A. and F.B.I. agents, and any decision by the Department of Justice or former Attorney General Levi in connection with the acts charged in this indictment not to prosecute agents or to postpone a prosecutional decision thereon. The requests in the form of interrogatories are denied. Moreover, any documents of the Department of Justice or by the former Attorney General detailing the reasons not to prosecute with respect to the acts charged in this indictment are "internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case" and are not subject to disclosure under Rule 16(a)(2).

██ Government opposition to these requests also takes the form of an assault on the sufficiency of defendant's showing to entitle him to discovery on the issue of selective prosecution. In *United States v. Berrios*, 501 F.2d 1207 (2d Cir. 1974) the

Second Circuit noted that mere allegations of selective prosecution are insufficient to compel disclosure of government documents, but that a subpoena to the government under Rule 17(c), F.R.Crim.P., could issue on a hearing on a motion to dismiss if the defendant made a showing of the existence of the elements of the defense and the probativeness of the document in the government's possession. The elements of this defense are twofold: defendant must make a *prima facie* demonstration that with respect to the underlying conduct charged, he has been singled out for prosecution while others similarly situated have not and that the government's discriminatory selection has been invidious or in bad faith, i. e., "based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *Id.* at 1211. *See also United States v. Gardiner*, 531 F.2d 953 (9th Cir. 1976); *United States v. Cammisano*, 546 F.2d 238 (8th Cir. 1976); *United States v. Berrigan*, 482 F.2d 171 (3rd Cir. 1973).

■■■ The defendant concededly has not satisfied the second element. Notwithstanding this, he presses this Court to adopt the rationale of *United States v. Robinson*, 311 F.Supp. 1063 (W.D.Mo.1969) in which a prosecution was dismissed on a finding that the application of the statute involved therein to the defendant represented a systematic continuous policy of unjust discrimination in enforcement since the government had engaged in the same activity with impunity, and ordered disclosure despite the lack of even an allegation of purposefulness. He alternately contends that under *United States v. Falk*, 479 F.2d 616 (7th Cir. 1973) the burden should be shifted to the government to justify the nonexistence of this element.[5] These arguments are more properly addressed to a motion raising this defense, in connection with which a Rule 17(c) subpoena may be sought. For the purposes of this motion, however, and for the reasons above stated, the requested discovery on this issue is denied.

## GRAND JURY DISCLOSURE

On May 10, 1977 an article entitled "Bell Urged to Seek LaPrade Indictment" appeared in *The New York Times*. This article stated that "according to a (Justice) department official," grand jury testimony given by Kearney indicated that "he knew the techniques his agents were employing were illegal . . ." Quoting this official, the article continued: " 'In criminal law intent is a key factor, and Kearney admitted that he knew what was going on was wrong.' "

■■■ Item 40 is comprised of a set of interrogatories directed at ascertaining the identity of the. Justice Department "source" responsible for supplying the above information to the *Times*, so as to support a motion to dismiss the indictment based on the government's deliberate breach of grand jury secrecy in contravention of Rule 6(e), F.R.Crim.P. This request is beyond the scope of Rule 16 and, as such, it is denied. Moreover, it would appear that the appropriate remedy for improper disclosure of grand jury evidence is contempt and not dismissal of the indictment. *United States v. Hoffa*, 349 F.2d 20, 43 (6th Cir. 1965), *aff'd* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), *reh. denied* 386 U.S. 940, 951, 87 S.Ct. 970, 17 L.Ed.2d 880 (1967); *In re Grand Jury Subpoena Served upon Pedro Archuleta*, 432 F.Supp. 583 (S.D.N.Y.1977); *United States v. Schiavo*, 375 F.Supp. 475 (E.D.Pa.), *aff'd* 506 F.2d 1053 (3rd Cir. 1974). This is so, particularly here, where the information allegedly "leaked" could not have affected the grand jury proceeding and any resulting prejudice defendant might suffer can be cured in the jury selec-

---

5. In *Falk*, however, the burden was shifted only after the majority implicitly concluded that defendant had shown enough to satisfy both prongs of the *Berrios* test: that few indictments had been brought for non-possession of draft cards (the crime therein charged) and that defendant was a vocal dissenter involved in draft counseling activities. In addition Falk had offered to prove that the prosecutor had stated that he knew that Falk had been singled out for prosecution and that Falk's draft-counseling activities was a reason behind the prosecution.

tion process through *voir dire*. *See United States v. Kahaner*, 204 F.Supp. 921, 924 (S.D.N.Y.1962).

However, the *Times* article raises a matter of serious import and lays an allegation of grave impropriety at the government's doorstep. Consequently, I will follow the path blazed by my brother Lasker in *Archuleta* and direct the government to conduct an internal investigation to determine whether there existed, in fact, a Justice Department source for the disclosure, and if so, his or her identity; and to apprise this court of the results of this investigation so that appropriate steps may be taken. Needless to say, this investigation is to be conducted by persons other than those associated with the investigation, presentation or prosecution of this case.

### STATUTE OF LIMITATIONS

 Item 45 seeks all information in the government's possession which refers to the specific dates of the acts charged in the substantive counts and in certain of the overt acts of the conspiracy counts, so as to enable defendant to challenge the indictment on the grounds that the five year statute of limitations has expired. This request is of the broad "fishing expedition" variety, and seeks wholesale disclosure of the government's case at this early date. It is accordingly denied.

 This ruling does not imply that defendant may not appropriately raise the bar of the statute of limitations by a subsequent motion to dismiss the indictment, *Jaben v. United States*, 333 F.2d 535, 538 (8th Cir. 1964) *aff'd* 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 *reh. denied* 382 U.S. 873, 86 S.Ct. 19, 15 L.Ed.2d 114 (1965); however, any objection not found on the face of the indictment would present factual issues inextricably interwoven with the merits of the case which are more properly left to trial. *United States v. Andreas*, 374 F.Supp. 402, 406–07 (D.Minn.1974); *United States v. Tolub*, 187 F.Supp. 705, 709 (S.D. N.Y.1960). Of course, any evidence in the possession of the government that the acts which purportedly occurred within the five-year period actually took place prior to that period is *Brady* material and thus discoverable.

### CONCLUSION

 Defendant's final request seeks to require the government to file affidavits that it has contacted all the appropriate governmental agencies involved and has requested the production of the discoverable materials. In so doing, it presupposes that the government will not, in the absence of filing such affidavits, comply with the order of this Court as herein outlined. I will not make such a presupposition. Appropriate remedies are available to defendant in the event of non-compliance. The request is denied.

Defendant's motion is granted to the extent detailed in this opinion. In all other respects it is denied. Prior to production the government will be allowed to redact any discoverable materials in order to protect on-going investigations and to prevent undue embarrassment or injury to unrelated third parties. Of course, should defendant contest particular material as redacted, an appropriate motion may be made.

IT IS SO ORDERED.