UNITED STATES of America, Plaintiff,

v.

Frank CAFARO, Anthony "Tony" Farrell,
Howard Summers, Benjamin Moratti,
Patricia Kelly, Defendants.

No. 79 Cr. 520 (RWS).

United States District Court,
S. D. New York.

Oct. 22, 1979.

**514**

Robert B. Fiske, Jr., U. S. Atty., for the Southern Dist. of New York, New York City, for U. S.; Minna Schrag, Asst. U. S. Atty., New York City, of counsel.

Hoffinger, Friedland & Roth, New York City, for Frank Cafaro; Jack S. Hoffinger, Stephen L. Weiner, New York City, of counsel.

Maloney, Viviani & Higgins, New York City, for Anthony Farrell; Arthur J. Viviani, New York City, of counsel.

Dawson, Kimelman & Clayman, New York City, for Howard Summers; Steven Kimelman, New York City, of counsel.

Northrop & Jessop, New York City, for Benjamin Moratti; Leon S. Harris, New York City, of counsel.

Michael A. Corriero, New York City, for Patricia Kelly.

## OPINION

SWEET, District Judge.

Before the court is a series of pre-trial motions in a four count narcotics indictment. Count One of the indictment charges Frank Cafaro, Anthony "Tony" Farrell, Howard Summers, Benjamin Moratti and Patricia Kelly with conspiracy to distribute Schedule II controlled substances in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(B). Count Two charges Moratti with distribution of an unlawful substance in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A). Count Three charges Farrell and Summers with attempt to distribute a Schedule II controlled substance in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B) and 846 and 18 U.S.C. § 2. Count Four alleges that Cafaro used a telephone to facilitate a conspiracy to distribute narcotics in violation of 21 U.S.C. § 843.

Following a guilty plea by Cafaro to Count I of the indictment, and his waiver of all alleged constitutional violations during the Government's investigation of the crime, the following motions remain to be decided:

1. Farrell's motion to dismiss Count Three of the indictment.

2. Motions by Kelly, Moratti and Summers for severances under Rule 14, Fed.R. Crim.Proc.

3. Motions by Kelly, Farrell and Moratti for discovery and bills of particulars.

4. Kelly's motion to exclude tape recordings of telephone conversations with Government agents recorded on June 28, 1979 as hearsay.

5. Moratti's motion to suppress a telephone conversation with Cafaro recorded on June 28, 1979.

6. Moratti's motion to dismiss Counts One and Two of the indictment.

The Government alleges that the five defendants conspired to purchase narcotics from Frank Elman with intent to distribute them. Elman was arrested on June 5, 1979 and began a course of cooperation with the Government. On June 6, Farrell is alleged to have negotiated over the telephone to purchase narcotics from Elman for $10,000 and to bring the $10,000 to Elman's apartment that evening. Federal agents arrested Farrell with $10,000 in his briefcase in the lobby of Elman's apartment.

The Government alleges that on June 6, Summers stated that he was participating in the purchase of narcotics by Farrell, and provided $100 to Farrell toward Farrell's attempted purchase of narcotics.

On June 6, according to the Government, Elman also had a telephone conversation with Cafaro in which Cafaro asked to purchase methamphetamine (desoxyn) from Elman. On June 27, 1979, Elman had further telephone conversations with Cafaro which implicated Cafaro in the alleged conspiracy. Agents of the Drug Enforcement Agency ("DEA") arrested Cafaro on the evening of June 27. The DEA agents questioned Cafaro and he agreed to cooperate with the Government. Cafaro's subsequent guilty

plea and waiver of all possible violations of Constitutional rights arising out of the arrest and questioning eliminates such issues. DEA agents accompanied Cafaro back to his apartment, where he placed a recorded telephone call to Moratti at 1:30 a.m. on June 28. Cafaro also placed a very brief call to Kelly.

On June 28, 1979, Government agents, posing as Cafaro's mother, placed two telephone calls to defendant Kelly. During the conversations Kelly made certain incriminating statements.

## I. *Farrell's Motion to Dismiss Count Three*

Defendant Farrell has moved to dismiss Count Three of the indictment which charges him with attempt to distribute and to possess a controlled substance in violation of 21 U.S.C. § 846. He contends that evidence of the June 6 telephone calls with Elman and transportation of $10,000 to the lobby of Elman's apartment is not sufficient to prove attempt to possess a controlled substance. He claims that because he was arrested before he ever received possession of the controlled substance, or indeed before he ever saw the controlled substance so that possession was imminent, his actions cannot be construed as an attempt.

█ To prove the crime of attempt it is necessary for the Government to show: (a) that the defendant intended to achieve the illegal substantive offense; and (b) that he took a "substantial step" toward culmination of the substantive offense. *United States v. Jackson,* 560 F.2d 112 (2d Cir.), *cert. denied,* 434 U.S. 941, 1017, 98 S.Ct. 434, 736, 54 L.Ed.2d 301, 762 (1977); *United States v. Stallworth,* 543 F.2d 1038, 1040 (2d Cir. 1976).

█ In this case the Government need not show that the defendant was in possession of a controlled substance or that he was imminently prepared to take possession of a substance he believed to be a controlled substance. Rather it must prove beyond a reasonable doubt that he intended to take possession of a controlled substance with

intent to distribute and that he "engaged in conduct which constitutes a substantial step toward commission of the crime, conduct strongly corroborative of the firmness of the defendant's criminal intent." *United States v. Stallworth, supra* at 1040.

█ The telephone calls between Farrell and Elman in which Farrell sought to purchase methaqualone coupled with the appearance of Farrell in the lobby of Elman's building carrying $10,000 constitute sufficient allegations to defeat Farrell's motion. The Government need not wait until the alleged offense is complete, or even nearly complete, before intervening to prevent commission of the crime. *United States v. Jackson, supra; United States v. Mandujano,* 499 F.2d 370 (5th Cir. 1974), *cert. denied* 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975); *United States v. Heng Awkak Roman,* 356 F.Supp. 434 (S.D.N.Y.), *aff'd,* 484 F.2d 1271 (2d Cir. 1973), *cert. denied,* 415 U.S. 976, 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974).

Farrell's reliance upon *United States v. Quijada,* 588 F.2d 1253 (9th Cir. 1978), and *United States v. Korn,* 557 F.2d 1089 (5th Cir. 1977), is misplaced. *Quijada* involved a claim of factual impossibility, since the substance actually transferred to the defendant was not a controlled substance. The claim was denied. Similarly, in *Korn,* the court reversed the district court's dismissal of an indictment since it rejected defendant's claim of factual impossibility.

█ Neither case indicates that the Government can not prove attempt to distribute narcotics by a method other than actual transfer to a defendant of a substance he believes to be controlled, but which is not in fact controlled. Certainly, the "substantial step" required to prove an attempt can occur long before the defendant actually takes possession of the substance he intends to distribute. So long as the Government proves each element of the offense beyond a reasonable doubt, it is free to select the means of proof.

For these reasons, Farrell's motion to dismiss Count Three is denied.

II. *Motions for Severance Under Rule 14*

Defendants Summers, Kelly and Moratti have moved for severance of the counts against them pursuant to Rule 14, Fed.R. Crim.Proc. The Government opposes all requests. Moratti, Summers and Kelly contend that the indictment and the particulars fail to set forth a joint conspiracy among all five defendants, but allege separate conspiracies between each defendant and Frank Elman, a pharmacist and alleged co-conspirator. Defendants contend that they will be prejudiced by presentation to the jury of evidence relating to activities in which they were not involved.

 The decision to grant or deny a severance pursuant to Rule 14 rests in the sound discretion of the court. *See Opper v. United States*, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101 (1954); *United States v. Bernstein*, 533 F.2d 775, 789 (2d Cir.), *cert. denied*, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976); *United States v. Projansky*, 465 F.2d 123, 138 (2d Cir.), *cert. denied*, 409 U.S. 1006, 93 S.Ct. 432, 34 L.Ed.2d 299 (1972). The burden is on the moving defendants to show that if severance is not granted, they will be so severely prejudiced as to be denied a fair trial. *See United States v. Borelli*, 435 F.2d 500, 502 (2d Cir. 1970), *cert. denied*, 401 U.S. 946, 91 S.Ct. 963, 28 L.Ed.2d 229 (1971).

The indictment in this case charges a conspiracy to distribute controlled substances commencing on or before June 6, 1979 and continuing until June 28, 1979. The Government has set forth four overt acts tending to connect Farrell, Cafaro and Summers with a single scheme to purchase methaqualone (quaalude) tablets and desoxyn from Elman. The first overt act is a June 6 recorded telephone conversation from Elman to Cafaro in which Cafaro asked to buy desoxyn and implicated Farrell. The second overt act is a series of telephone conversations recorded on June 6 between Elman and Farrell in which Farrell asked to purchase methaqualone and indicated involvement with Cafaro. The third overt act is Farrell's bringing of $10,-000 to Elman's apartment building, and the fourth overt act is Summers' statement to a DEA agent and to Deena Glanzberg that he was participating in Farrell's purchase of methaqualone and his delivery of $100 to Farrell.

The Government's bill of particulars and the discovery to date reveals further evidence of a joint conspiracy. The bill of particulars alleges that Moratti sold hydromorphone tablets to Ilene Stern on June 7, 1979 for approximately $100. The Government has disclosed the transcript of a telephone call from Cafaro to Moratti on June 28, during which Moratti revealed knowledge of facts that could indicate his involvement in a joint scheme. The Government has also disclosed transcripts of the two recorded conversations from Federal agents to Kelly on June 28 which could indicate her participation in a joint scheme with Cafaro and Moratti.

 Of course, the court cannot determine at this stage what further proof the Government intends to offer to demonstrate a single conspiracy. However, the allegations contained in the overt acts and the bill of particulars, coupled with the evidence already disclosed by the Government, sufficiently allege a joint conspiracy, rather than a series of separate conspiracies.

The Court of Appeals has shown considerable tolerance for the finding of a joint conspiracy in narcotics cases. *See United States v. Paoli*, 603 F.2d 1029 (2d Cir. 1979); *United States v. Moten*, 564 F.2d 620 (2d Cir. 1977), *cert. denied*, 434 U.S. 959, 98 S.Ct. 489, 54 L.Ed.2d 318 (1978); *United States v. Taylor*, 562 F.2d 1345 (2d Cir.), *cert. denied*, 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977); *United States v. Lam Lek Chong*, 544 F.2d 58 (2d Cir. 1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550 (1977).

The allegations contained in the indictment and the bill of particulars do not establish that this is a case such as *United States v. Bertolotti*, 529 F.2d 149 (2d Cir. 1975), and *United States v. Miley*, 513 F.2d 1191 (2d Cir.), *cert. denied*, 423 U.S. 842, 96

S.Ct. 75, 46 L.Ed.2d 62 (1975), in which the Government failed to prove a single conspiracy among alleged co-conspirators. Here the Government alleges and will be required to prove that the defendants participated in a joint scheme. In view of the substantial evidence of a joint conspiracy currently available, granting of a severance at this stage of the proceedings would be premature, *United States v. Aloi*, 449 F.Supp. 698, 741 (E.D.N.Y. 1977), even though it might be appropriate at some later point in the proceedings.

 The claim of possible prejudice resulting from "spill-over" is also unconvincing at this stage. If the Government succeeds in proving a single conspiracy, the statements of co-conspirators made during the course and in furtherance of the conspiracy will be admissible against all defendants. Fed.R.Evid. 801(d)(2)(E). However, even if more than one conspiracy is involved, the defendants have not yet sustained the burden of showing that they would be severely prejudiced by joinder with the other defendants in this case. Following Cafaro's guilty plea, there remain only four defendants. There is no showing that the complexity of this case would make it difficult for the jury to evaluate the evidence against each defendant individually. *United States v. Lam Lek Chong, supra* at 66. Furthermore, unlike *Bertolotti*, in which co-defendants were required to sit through weeks of damaging testimony concerning transactions with which they were uninvolved, the Government's proof in this case is expected to take no more than a few days. Thus, it has not been established that any spill-over of evidence would prejudice the defendants so severely that they would in effect be denied a fair trial. *United States v. Moten, supra* at 627.

 The balance of possible prejudice to the defendants if the government is unable to prove a single conspiracy against the "prejudice to the public interest caused by the time, expense, delay, and duplication of trials," *United States v. Aloi, supra* at 740; *see also United States v. Moten, supra* at 627; *United States v. Wallace*, 272 F.Supp.

338, 341 (S.D.N.Y. 1967), results in the denial of the motions of Summers, Moratti and Kelly for severances.

### III. Requests for Bills of Particulars and Discovery

#### A. Bills of Particulars

 Defendants Farrell and Moratti have moved to obtain bills of particulars pursuant to Rule 7, Fed.R.Crim.Proc. The purpose of a bill of particulars is to insure that a defendant adequately understands the charges made against him, to avoid unfair surprise at trial, and to enable a defendant to prove double jeopardy if he is later charged with the same crime. *Wong Tai v. United States*, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1929); *United States v. Goldman*, 439 F.Supp. 337, 351 (S.D.N.Y. 1977). The extent to which requests for bills of particulars should be granted is a matter within the discretion of this court. *United States v. Tramunti*, 513 F.2d 1087, 1113–14 (2d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

 Though Rule 7(f) should be liberally construed, *United States v. O'Connor*, 237 F.2d 466 (2d Cir. 1956), it should not be used by defendants to accomplish pretrial discovery of the government's case. *United States v. Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974). Rule 7(f) does not require the Government either to reveal the means by which a crime has been carried out, *United States v. Andrews*, 381 F.2d 377 (2d Cir. 1967), *cert. denied*, 390 U.S. 960, 88 S.Ct. 1058, 19 L.Ed.2d 1156 (1968), or to disclose details that would unduly restrict its presentation of proof at trial. *United States v. Leonelli*, 428 F.Supp. 880, 882 (S.D.N.Y. 1977); *United States v. McCarthy*, 292 F.Supp. 937, 940 (S.D.N.Y. 1968).

#### 1. Farrell's Requests

The Government has consented to the dismissal of Count Five against Farrell and has granted all of Farrell's requests with respect to Count One. With respect to Count Three, the Government has specified the date, time, place and quantity of narcot-

ics that Farrell attempted to possess. The Government has also stated that a controlled substance was not available, though it would have been if not for Government intervention. This answers, in substance, Farrell's requests 3 and 4 concerning Count Three.

### 2. *Moratti's Requests*

■ Moratti has made six requests with respect to Count One of the indictment. The Government has provided complete responses to requests 2 and 6. It has also provided dates, times and places of the overt acts specified in Count One. This constitutes an adequate response to requests 1 and 5, since the Government is not required to allege all overt acts committed in furtherance of a conspiracy. *United States v. Lam Lek Chong*, 544 F.2d 58, 63 (2d Cir. 1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550 (1977); *United States v. Carroll*, 510 F.2d 507, 509 (2d Cir. 1975), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2633, 49 L.Ed.2d 378 (1976). Requests 3 and 4 for particulars as to the date and time of formation of the conspiracy and the role that Moratti played in it are denied. *United States v. Leonelli, supra; United States v. Kelley*, 254 F.Supp. 9 (S.D.N.Y. 1966).

Moratti has made seven requests concerning Count Two of the indictment. The Government has granted all of these requests.

Accordingly, the defendants' requests for particulars are denied except as already granted by the Government's disclosure.

### B. *Requests for Discovery*

Defendant Moratti has made thirty-seven requests for discovery. Farrell has made ten requests. Defendant Kelly joins in the requests made by other defendants.

The Government has already granted many of these requests. In particular, the Government has:

1. Supplied copies and transcripts of all tape-recorded conversations between a defendant and a Government agent.

2. Provided for copying and inspection of written statements by the defendants, in the Government's possession, whose existence is known or may become known to the Government's attorney.

3. Supplied oral statements by the defendants that the Government intends to offer at trial, made in response to questioning by a person whom the defendant knew to be a government agent.

4. Provided a copy to each defendant of that defendant's prior criminal record.

5. Disclosed and made available for inspection the physical evidence that the Government intends to offer at trial.

6. Agreed to provide to each defendant the results of examination and tests intended to be used at trial as they become available.

7. Agreed to disclose as material under 18 U.S.C. § 3500 copies of any agreement between the Government and Government witnesses, and rap sheets and prior statements of Government witnesses on the evening prior to the witnesses' testimony.

8. Disclosed that there are no photographic or corporeal identifications of the defendants, no surveillance photographs and no electronic surveillance or wiretaps apart from consensually recorded conversations.

The Government has assured the court that it has met and will continue to meet all obligations to disclose exculpatory material as required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The Government has further specified that it will comply fully with 18 U.S.C. § 3500 by providing witness statements, rap sheets of Government witnesses and any agreements between such witnesses and the Government on the night before each witness testifies. The court accepts this assurance in good faith. In the event the defendants are, or become, aware of any particular material which they contend should be produced because of inconsistencies or otherwise, it will be produced for an "in camera" inspection

if necessary. Accordingly, the defendants' requests for discovery will be analyzed only insofar as they are required to be disclosed by a rule outside the scope of *Brady* and 18 U.S.C. § 3500, particularly Rule 6(e) and 16, Fed.R.Crim.Proc.

The Government's pretrial discovery to date constitutes a complete response to all of defendant Farrell's requests, since all requests have either been granted or the Government has answered that requested materials do not exist—such as grand jury testimony of Farrell, or copies of consents to recorded conversations of Farrell.

The Government's response also satisfies in effect the following requests of Moratti and Kelly: Requests No. 1, 4, 6, 7, 8(a), 8(c), 9, 10, 11, 12, 13, 14, 18, 19, 20, 21, 30, 32, 33, 34, 35, 36 and 37.

Request No. 2 is for all oral statements of defendants made before or after arrest to a government agent, informer or witness or in response to interrogation by a person then known to be a government agent, whether or not preserved in writing or recording. The Government has provided each defendant with copies of all of that defendant's oral statements which are recorded. The Government is further required, in accordance with Rule 16(a)(1)(A) to provide the respective defendants with the substance of oral statements, if any exists, before or after arrest which the Government intends to offer at trial and which were made in response to interrogation by a person then known to be a government agent. *United States v. Pollack,* 175 U.S.App.D.C. 227, 239, 534 F.2d 964, 976 (D.C. Cir.), *cert. denied,* 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976); *United States v. Dioguardi,* 332 F.Supp. 7, 17 (S.D. N.Y. 1971).

Item 3 requests discovery of any recorded testimony of the defendants before a governmental agency or before a grand jury. Rule 16(a)(1)(A) provides for disclosure to a defendant of his recorded testimony before a grand jury. Item 3 is accordingly granted to the extent it relates to the grand jury testimony of each defendant, if any exists. The requests for testimony before other government agencies is denied.

The defendants have made a number of requests for material of a general nature without specifying the basis for the request or the reason the material is needed. These include Items 5, 8(b) 17, 22, 23, 27 and 29. Such requests for all "relevant" or "material" items or statements are "too broadly stated to permit meaningful relief under Rule 16." *United States v. Dioguardi, supra* at 17; *United States v. Kearney,* 436 F.Supp. 1108, 1112 (S.D.N.Y. 1977). These requests are denied.

Item 8(d) requests all books, papers, objects or photographs presented to the grand jury. In the absence of a showing of particularized need for discovery of grand jury proceedings, this request is denied. *See Dennis v. United States,* 384 U.S 855, 870, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).

Defendants have stated no basis for requests 15 and 16, which call for the names of individuals who were unable to identify defendants and for all statements made to the prosecution which contradict the testimony of Government witnesses. These broad requests for exculpatory material are granted only to the extent they call for material required by *United States v. Agurs, supra.*

Requests 24 and 25 call for all statements or actions by defendants on which the Government intends to rely at trial and the identity of all witnesses to such statements or actions. These requests go far beyond the scope of Rule 16, and are not authorized by any Rule or judicial decision. No particular need for such material has been suggested. Accordingly, these requests are denied. *United States v. Jordan,* 399 F.2d 610, 615 (2d Cir. 1968), *cert. denied,* 393 U.S. 1005, 89 S.Ct. 496, 21 L.Ed.2d 469 (1968).

Moratti and Kelly have requested a list of the Government's witnesses, (Request 28), in accordance with *United States v.*

*Cannone,* 528 F.2d 296 (2d Cir. 1975). In *Cannone,* the Court of Appeals specified that in determining whether disclosure of witnesses was appropriate, the defendants' specific need for the material should be balanced against the "possible dangers accompanying disclosure (i. e. subornation of perjury, witness intimidation, and injury to witnesses)." *Id.* at 302. In this case, none of the defendants has made any specific showing of a particularized need for the witness list, or that the list is material in preparing a defense. Under the circumstances, the court declines to order the Government to disclose its witness list. *United States v. Sherman,* 426 F.Supp. 85, 89 (S.D.N.Y. 1976).

 Request 26, calling for the names of all witnesses involved in the Witness Protection Program, is also denied. Disclosure of such witnesses would defeat the purpose of the program and jeopardize the safety of witnesses. *See United States v. Cavallaro,* 553 F.2d 300 (2d Cir. 1977) (safety of witnesses is legitimate factor in deciding whether to disclose witness identity).

 Request 31, for all persons whom the Government asked about criminal activity of the defendants, is denied. The defendants have no right to be apprised of all investigatory work on a case. *Moore v. Illinois,* 408 U.S. 785, 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); *United States v. Percevault,* 490 F.2d 126, 130 (2d Cir. 1974).

In summary, all of Farrell's requests for discovery are granted to the extent consented to by the Government, or required by 18 U.S.C. § 3500 and *Brady v. Maryland.* Moratti's and Kelly's requests 2 and 3 are granted to the extent indicated above. All other requests are denied.

### IV. *Kelly's Motion to Exclude the June 28 Conversations is Denied*

 Defendant Kelly has moved to exclude the tapes of two telephone calls made by a DEA agent, impersonating Cafaro's mother, to Kelly. In light of Cafaro's waiver of all possible constitutional violations surrounding his arrest and interrogation, the claim that these conversations constitute the fruit of illegally obtained evidence cannot be sustained. Furthermore, Kelly has no standing to assert a violation of Cafaro's constitutional rights. *Massiah v. United States,* 377 U.S. 201, 206–07, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Wong Sun v. United States,* 371 U.S. 471, 491–92, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

 Kelly also contends that her statements made on the tapes are inadmissible hearsay. However, after review of the transcript tapes, the court is satisfied that Kelly's statements are party admissions under Rule 801(d)(2), Fed.R.Evid., and are therefore not hearsay. Kelly's motion to exclude these tapes is denied.

### V. *Moratti's Motion to Dismiss Counts I and II of the Indictment is Denied*

Moratti has moved to dismiss Counts I and II of the indictment, charging him with conspiracy to distribute and distribution of controlled substances, pursuant to Rule 12, Fed.R.Crim.Proc. The only basis for this motion suggested in Moratti's moving papers is that there is no substantial evidence either linking him to the conspiracy or demonstrating that he sold narcotics.

 It would be premature to dismiss an indictment based on a claim of insufficient evidence. A motion to dismiss based "upon assumptions of what the Government's proof will be at trial . . . can appropriately be decided only by the trial court." *United States v. Wolfson,* 269 F.Supp. 621, 625 (S.D.N.Y. 1967), *aff'd,* 405 F.2d 779 (2d Cir. 1968), *cert. denied,* 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969). An indictment, valid on its face and returned by a properly constituted grand jury, is sufficient to require trial of the charge on the merits. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Mann,* 517 F.2d 259, 267 (5th Cir. 1975), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976); *United States v. Ramsey,* 315 F.2d 199 (2d Cir.), *cert. denied,* 375 U.S. 883,

84 S.Ct. 153, 11 L.Ed.2d 113 (1963). The motion to dismiss Counts One and Two is denied.

## VI. *Moratti's Motion to Suppress the June 28, 1979 Telephone Conversation*

Moratti has moved to suppress a recorded telephone conversation with Cafaro which took place at 1:30 a. m. on June 28. Moratti contends that Cafaro did not validly consent to the recording of the conversation, and that, as a result, the recording of the call without Moratti's consent violated Moratti's Fourth Amendment rights.

The evidence adduced at a suppression hearing held pursuant to Rule 41, Fed.R. Crim.Proc., supports the following findings of fact. DEA agents arrested Cafaro shortly after 7:00 p. m. on June 27, 1979. Following discussions with Cafaro and his attorney, the agents transported him to DEA headquarters. After processing, DEA agents questioned Cafaro and asked him to cooperate with the Government. At approximately 10:00 p. m., Cafaro met with his attorney and shortly thereafter notified the agents that he would cooperate. The agents proceeded to question Cafaro and urged him to make some telephone calls to assist the Government's investigation. Cafaro agreed. Two agents drove Cafaro back to his apartment to make the phone calls at about 1:00 a. m. on June 28.

One of the agents, Jeffrey Hall, accompanied Cafaro to his apartment. Cafaro had earlier discussed with Hall the fact that he was addicted to desoxyn. He asked Hall whether he could inject desoxyn in order to relieve his withdrawal. Hall had no objection and allowed Cafaro to "shoot up." A second agent, Franciosa, joined Hall and Cafaro soon thereafter. At this juncture, Cafaro placed the telephone call to Moratti, at approximately 1:30 a. m., that is the subject of this motion to suppress. Moratti claims that the combination of pressure applied to Cafaro by DEA agents and the injection of desoxyn rendered Cafaro's consent to make the call invalid.

█ If one party to a telephone conversation consents to its being taped, the other party can not argue that his Fourth Amendment rights have been violated. *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) (plurality opinion); *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *United States v. Craig,* 573 F.2d 455, 474 (7th Cir. 1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978); *United States v. Fuentes,* 563 F.2d 527, 533 (2d Cir.), *cert. denied sub nom. Sansone v. United States,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977). However, if Moratti can show that defendant Cafaro did not consent to the taping of the conversation, he can establish that his own Fourth Amendment rights were violated. *United States v. Fuentes, supra* at 533.

█ The standard for determining consent to the taping of a phone conversation is lower than that for demonstrating waiver of the Fourth Amendment right against unreasonable search and seizure, the Fifth Amendment right against self-incrimination or the Sixth Amendment right to counsel. In the latter contexts, the burden is on the Government to show by a clear preponderance of the evidence that the consent was the product of the defendant's own freely expressed choice. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (Fourth Amendment); *Mincey v. Arizona,* 437 U.S. 385, 398, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (Fifth Amendment); *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1976) (Sixth Amendment).

█ However, once an individual has agreed to cooperate with law enforcement officials, the Government can show consent to the taping of a conversation by proving that the informer allowed his conversation to be recorded "after knowing what the law enforcement agents were about." *United States v. Fuentes, supra* at 533. *Accord, United States v. Bonanno,* 487 F.2d 654 (2d Cir. 1973). In *Fuentes,* the Court of Appeals ruled that this standard is "considerably less stringent than that required to show consent for a physical search" *id.,* and

could be proven by circumstantial evidence. The justification for this lower standard is that where a defendant has entered a course of cooperation with the Government, the further step of permitting a conversation to be taped does not entail additional detrimental consequences to the defendant. *Bonanno, supra* at 659. By contrast, in cases involving consent to a search or waiver of the right to be silent, the defendant's action ordinarily does not follow upon a prior course of cooperation and can result in the Government's obtaining evidence that is directly adverse to the defendant.

In this case, Cafaro has withdrawn any claim that his decision to cooperate with DEA agents was coerced. In order to succeed in suppressing the June 28 conversation, Moratti must show that Cafaro was unaware of what the DEA agents were doing at the time he allowed the conversation to be recorded. Moratti has failed to meet this heavy burden.

■ The testimony of agents Hall and Franciosa and of Cafaro concerning the circumstances of the telephone call indicate that Cafaro was fully aware of what the agents wanted him to do and why they wanted him to do it. Both Hall and Franciosa admitted that Cafaro had injected himself with desoxyn after arriving at his apartment. Regardless of whatever other consequences may flow from this participation by the agents in narcotic abuse, both testified that Cafaro was coherent both before and during the telephone call. Franciosa stated that Cafaro seemed more relaxed at his apartment than he had been while at DEA headquarters. Cafaro testified to injecting himself with desoxyn and to being exhausted after returning to his apartment having been up for two days. Nevertheless, Cafaro remembered the events at his apartment clearly, and never suggested that he either did not realize his call was being recorded by the DEA agents or that he misunderstood the purpose of the. exercise. A review of the transcript of the call reveals that Cafaro conversed coherently. Indeed, Cafaro testified that he was concerned about what the agents asked him to

say and declined to say certain things that he felt would reveal his informer status to Moratti. Under the standard set forth in *Fuentes* and *Bonanno* Cafaro's consent was valid.

As indicated, Moratti has no constitutional or statutory basis for suppressing the telephone call from Cafaro after the latter's injection of desoxyn and can not be the unwitting beneficiary of Hall's misconduct. Even if it is determined that Cafaro was not truthful in stating that Hall provided the drug (having taken it initially from Cafaro's bedroom), it is undisputed that Hall arranged for the return to the apartment where the syringe and desoxyn were both available, that the return was a result of the bargain of cooperation struck, and that Cafaro specifically requested an opportunity to inject desoxyn to prevent his withdrawal, which was observable to the agents.

The inherent supervisory powers of the court, relied upon in *United States v. Jacobs*, 531 F.2d 87 (2d Cir.), *vacated and remanded*, 429 U.S. 909, 97 S.Ct. 299, 50 L.Ed.2d 277, *aff'd on remand*, 547 F.2d 772 (2d Cir. 1976), *cert. dismissed*, 436 U.S. 31, 98 S.Ct. 1873, 56 L.Ed.2d 53 (1977), and described by the Circuit Court in *United States v. Brown*, 602 F.2d 1073 (2d Cir. 1979), and *United States v. Fields*, 592 F.2d 638 (2d Cir. 1978), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979), do not require that in the interests of justice, Moratti should benefit from Hall's conduct, considering also that the evidence is not predominant that the dosage involved was in excess of Cafaro's prescriptive amount.

Accordingly, the motion to suppress the telephone call is denied.

IT IS SO ORDERED.