# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

———————————

**No. ACM S32813**

———————————

**UNITED STATES**
*Appellee*

v.

**Troy D. SOUZA, Jr.**
Airman Basic (E-1), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 17 February 2026

———————————

*Military Judge*: Nathan R. Allred.

*Sentence*: Sentence adjudged 20 November 2024 by SpCM convened at Joint Base San Antonio-Fort Sam Houston, Texas. Sentence entered by military judge on 27 December 2024: Bad-conduct discharge and confinement for 90 days.

*For Appellant*: Lieutenant Colonel Allen S. Abrams, USAF; Major Megan R. Crouch, USAF; Captain Paige F. Markley Denton, USAF; Captain Olga Stanford, USAF.

*For Appellee*: Colonel G. Matt Osborn, USAF; Major Vanessa Bairos, USAF; Major Kate E. Lee, USAF; Captain Heather R. Bezold, USAF; Mary Ellen Payne, Esquire.

Before GRUEN, PERCLE, and MORGAN, *Appellate Military Judges*.

Judge PERCLE delivered the opinion of the court, in which Senior Judge GRUEN and Judge MORGAN joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

PERCLE, Judge:

A special court-martial composed of a military judge alone found Appellant guilty, in accordance with his pleas and pursuant to a plea agreement, of one specification of attempted possession of Lysergic Acid Diethylamide (LSD) with the intent to distribute on divers occasions, in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880; and one specification of wrongful use of LSD, and one specification of wrongful distribution of LSD, both in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.[1] The military judge sentenced Appellant to 90 days' confinement and a bad-conduct discharge. The convening authority took no action on the findings or sentence.

Appellant raises one issue on appeal which we have reworded: whether Appellant's plea of guilty to the Specification of Charge I was provident "when Appellant admitted to only one attempt[ed]" possession of LSD with the intent to distribute it. As discussed below, we agree with Appellant and find the military judge abused his discretion in accepting Appellant's plea of "on divers occasions" for attempt to possess LSD with the intent to distribute, and affirm the findings as modified and the sentence as reassessed.

## I. BACKGROUND

### A. Stipulation of Fact

Appellant entered into a stipulation of fact with the Government as part of his plea agreement. Relevant to Charge I and its Specification, the stipulation asserted the following facts:

> Between on or about 1 February 2024 and on or about 31 May 2024, [Appellant] placed three online orders for [LSD]. . . . while he was undergoing initial skills training at Joint Base San Antoino Fort Sam Houston, [Texas (JBSA-Fort Sam Houston)].
>
> [Appellant] placed the LSD order on . . . a Canadian website that sells LSD. . . .
>
> On 22 February 2024, [Appellant] asked [two active-duty Airmen] "so how feelin abt some acid ? Cuz I can buy 10 tabs for way cheaper. It's gonna come from Canada." [These Airmen] gave [Appellant] money to purchase the Canadian LSD.

---

[1] References to the UCMJ are to the *Manual for Courts-Martial, United States* (2024 ed.).

[Appellant] addressed the orders to himself in his own name and had them delivered to JBSA-Fort Sam Houston, a military installation. . . .

Between 1 February 2024 and on or about 1 July 2024, at least two of [Appellant]'s [online LSD] orders were intercepted by [law enforcement[2]].

[T]he intercepted packages contained blotter paper with psychedelic-like patterns. [T]esting confirmed that the intercepted blotters contained LSD.

Law enforcement replaced one of the intercepted LSD packages with a sign reading, "Say no to drugs" and had it delivered to the Fort Sam Houston post office. On 28 March 2024, [l]aw enforcement observed [Appellant] picking up the decoy package.

The stipulation of fact further provided the elements of each offense. As to the Specification of Charge I, violation of Article 80, UCMJ, the parties stipulated that during the charged timeframe between on or about 1 February 2024 and on or about 1 July 2024, Appellant's overt act constituting the attempt was "purchas[ing] an unknown quantity of [LSD] online." It further stated that while the act was done with the specific intent to commit the offense of wrongfully possessing LSD with the intent to distribute and that the act amounted to more than mere preparation, Appellant's aforementioned overt act would have resulted in the actual commission of the offense "except for an unexpected intervening circumstance, an operation between multiple federal and military law enforcement agencies." Nothing in the elements section of Charge I and its Specification of the stipulation laid out the charging theory of two or more occasions of attempted possession of LSD with the intent to distribute.

**B. The *Care*[3] Inquiry**

During the *Care* inquiry, Appellant was asked to "tell [the military judge] why [he was] guilty of the offense listed in the Specification of Charge I." Appellant answered as follows:

Earlier this year in March, I had an online order of LSD through the website[ ]. I ordered about 10 tabs. I paid for them through the money that [the Airmen] had sent me since they're -- since they were the ones that had asked to buy more from the first

---

[2] Law enforcement consisted of Homeland Security Investigations; Customs and Border Patrol; U.S. Army Criminal Investigations Division – Resident Agency, JBSA – Fort Sam Houston; and Air Force Office of Special Investigations Detachment.

[3] *United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969).

batch that was bought using their money. I had the delivery address to me. The first package failed to be delivered. After that, I sent a request for the package to be redelivered. I tracked the package and when I saw that it was delivered, I went to the post office to pick it up from the mail room. After having the package in my hand for about 10 seconds, [law enforcement agents] arrived to take it from me.

When specifically asked how many times he attempted to possess LSD under these facts, Appellant answered "twice." The military judge tried to clarify what Appellant meant by twice. Appellant told the military judge that the first time he attempted to possess LSD with the intent to distribute was when he went to the Canadian website, added the ten LSD tabs to an online-cart, entered shipping information and payment information, and paid for the LSD to ship to him with the intent to give some of it to his Airmen friends when it arrived in Texas.[4] However, this order never reached Appellant because the package was intercepted by law enforcement.[5]

The military judge then asked Appellant about the second instance Appellant attempted to possess LSD with the intent to distribute. Appellant answered the second time was "just like the first package, but I asked it to be reshipped because I never got the first package fully because that was the one that was intercepted and that's when they reshipped it and when I went to go pick it up, [it] was taken by [law enforcement]." The following exchange between the military judge and Appellant ensued:

> [Military Judge (MJ)]: Okay. So kind of talk -- when did that happen that you asked for them to send another package?
>
> [Appellant]: I would say about a week or two after the first package never showed up. After I ordered the first package and it didn't show up.
>
> MJ: Okay. And so what did you do? Walk me through that process. How did you go about asking them to send another package?

---

[4] Appellant does not contest the elements of the offense on appeal, and we find no reason to discuss them further here.

[5] We cannot conclusively discern when Appellant knew the package containing the initial order of LSD was intercepted by law enforcement. It is clear Appellant knew at the time he requested a new package ship that the original package was not going to arrive to him in Texas, and that at the time of trial he knew about law enforcement's intervention with the first package.

[Appellant]: There was a [ ] link on the website and that was how you contacted, I guess, the owner of the website, and if it ever got intercepted -- like you wouldn't know it was going to get intercepted or anything, but if it was stayed in one location because it was coming from Canada that you would ask for it to be reshipped and they would do so.

MJ: Okay. And so is that what happened in this instance?

[Appellant]: Yes, Your Honor.

MJ: Okay. And so did you -- you had that conversation with them [online], did you say?

[Appellant]: Yes, Your Honor.

MJ: Okay. And when you were having that conversation, what was your purpose? What were you intending?

[Appellant]: I was just trying to get my purchase of the LSD that I first ordered.

MJ: Okay. And what was, similarly, what was your intent? What were you planning to do with that -- when you're doing that, what were you planning to do with the LSD?

[Appellant]: To give it to [my Airmen friends].

MJ: Okay.

[Appellant]: The same as the first package.

MJ: Okay. So the same kind of distribution of -- they'll get some, but you'll also get some?

[Appellant]: Yes, Your Honor.

MJ: Did you get any response from the company when you did that?

[Appellant]: Yes, they said they would resend it.

Later, the military judge asked Appellant, "[B]ut for law enforcement intercepting and confiscating these packages that you had ordered, would you have completed the offense of wrongfully possessing LSD with the intent to distribute?" Appellant responded "Yes, Your Honor."

## II. DISCUSSION

On appeal, Appellant contends for the first time that his guilty plea to attempted possession of LSD with the intent to distribute on divers occasions was not provident and the military judge abused his discretion in accepting the

plea. Specifically, Appellant argues that there is a substantial question regarding Appellant's plea because "the conduct he described during the providence inquiry consisted of only one attempt," and not "on divers occasions." Appellant asks that we except out the words "on divers occasions" and uphold his plea for a single occasion. The Government argues the facts as plead support the language "on divers occasions" because the "Appellant's actions weeks after this initial attempt show a separate and distinct attempt to possess LSD with the intent to distribute."

As explained below, we agree with Appellant and affirm the findings of guilty to the Specification to Charge I and Charge I, excepting the words "on divers occasions," and reassessing the sentence.

## A. Law

### 1. Acceptance of Appellant's Pleas

We review a military judge's decision to accept an accused's guilty plea for an abuse of discretion. *United States v. Riley*, 72 M.J. 115, 119 (C.A.A.F. 2013) (quoting *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). "An abuse of discretion occurs when there is 'something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea.'" *Id.* (quoting *Inabinette*, 66 M.J. at 322).

"The military judge must ensure there is a basis in law and fact to support the plea to the offense charged." *United States v. Soto*, 69 M.J. 304, 307 (C.A.A.F. 2011) (citing *Inabinette*, 66 M.J. at 321–22) (additional citation omitted). The military judge may consider both the stipulation of fact and the inquiry with the appellant when determining if the guilty plea is provident. *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014) (citation omitted).

"A plea is provident so long as [the a]ppellant was 'convinced of, and [was] able to describe, all of the facts necessary to establish [his] guilt.'" *United States v. Murphy*, 74 M.J. 302, 308 (C.A.A.F. 2015) (second and third alterations in original) (quoting *United States v. O'Connor*, 58 M.J. 450, 453 (C.A.A.F. 2003)). "This court must find 'a substantial conflict between the plea and the accused's statements or other evidence' in order to set aside a guilty plea. The 'mere possibility' of a conflict is not sufficient." *United States v. Watson*, 71 M.J. 54, 58 (C.A.A.F. 2012) (quoting *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996)).

In performing its Article 66, UCMJ, review, "a Court of Criminal Appeals (CCA) may narrow the scope of an appellant's conviction to that conduct it deems legally and factually sufficient." *United States v. English*, 79 M.J. 116, 120 (C.A.A.F. 2019) (first citing *United States v. Piolunek*, 74 M.J. 107, 112 (C.A.A.F. 2015) ("upholding the CCA's determination that only nineteen of twenty-two charged images of child pornography were legally sufficient to

support a conviction"); then citing *United States v. Rodriguez*, 66 M.J. 201, 203 (C.A.A.F. 2008) ("upholding the CCA's decision to strike 'on divers occasions' from the specification at issue and affirm only one instance of the offense").

### 2. Attempted Wrongful Possession of LSD with Intent to Distribute

The elements of the offense of attempt to possess LSD with the intent to distribute to which Appellant pleaded guilty are that: (1) that Appellant did a certain overt act on divers occasions; (2) that the act was done with the specific intent to wrongfully possess some amount of LSD with the intent to distribute LSD in violation of Article 112a, UCMJ; (3) that the act amounted to more than mere preparation; and (4) that the act apparently tended to effect the commission of the intended offense. *Manual for Courts-Martial, United States* (2024 ed.) (*MCM*), pt. IV, ¶ 4.b.(1)–(4).

"Divers occasions" means two or more occasions. *See Rodriguez*, 66 M.J. at 203 (a trier of fact "need only determine that the accused committed two acts or more to satisfy the element of the crime as charged").

"To constitute an attempt there must be a specific intent to commit the offense accompanied by an overt act which directly tends to accomplish the unlawful purpose." *MCM*, pt. IV, ¶ 4.c.(1).

"Preparation"

> consists of devising or arranging the means or measures necessary for the commission of the offense. The overt act required goes beyond preparatory steps and is a direct movement toward the commission of the offense. For example, a purchase of matches with the intent to burn a haystack is not an attempt to commit arson, but it is an attempt to commit arson to apply a burning match to a haystack, even if no fire results. The overt act need not be the last act essential to the consummation of the offense. For example, an accused could commit an overt act, and then voluntarily decide not to go through with the intended offense. An attempt would nevertheless have been committed, for the combination of a specific intent to commit an offense, plus the commission of an overt act directly tending to accomplish it, constitutes the offense of attempt. Failure to complete the offense, whatever the cause, is not a defense.

*MCM*, pt. IV, ¶ 4.c.(2).

"It is a defense to an attempt offense that the person voluntarily and completely abandoned the intended crime, solely because of the person's own sense that it was wrong, prior to the completion of the crime." *MCM*, pt. IV, ¶ 4.c.(4). "The voluntary abandonment defense is not allowed if the abandonment

results, in whole or in part, from other reasons, for example, the person feared detection or apprehension, decided to await a better opportunity for success, was unable to complete the crime, or encountered unanticipated difficulties or unexpected resistance." *Id.*

"Any person subject to the UCMJ who is found guilty of an attempt under Article 80 to commit any offense punishable by the UCMJ shall be subject to the same maximum punishment authorized for the commission of the offense attempted . . . ." *MCM*, pt. IV, ¶ 4.d.

### 3. The Underlying Offense of Wrongful Possession of LSD with Intent to Distribute

The elements of the underlying offense of possession of LSD with the intent to distribute in violation of Article 112a, UCMJ, to which Appellant pleaded guilty, are (1) that Appellant possessed a certain amount of LSD, a controlled substance; (2) that the possession was wrongful; and (3) that the possession was with the intent to distribute. *MCM*, pt. IV, ¶ 50.b.(6)(a)–(c).

"'Possess' means to exercise control of something." *MCM*, pt. IV, ¶ 50.c.(2). "'Distribute' means to deliver to the possession of another." *MCM*, pt. IV, ¶ 50.c.(3). "'Deliver' means the actual, constructive, or attempted transfer of an item, whether or not there exists an agency relationship. *Id.* "Possession, use, distribution, introduction, or manufacture of a controlled substance is wrongful if it is without legal justification or authorization." *MCM*, pt. IV, ¶ 50.c.(5). "Intent to distribute may be inferred from circumstantial evidence." *MCM*, pt. IV, ¶ 50.c.(6).

The maximum punishment for this Article 112a, UCMJ, offense is a dishonorable discharge, forfeiture of all pay and allowances, and confinement for 15 years. *MCM*, pt. IV, ¶ 50.d.(2)(a).

### 4. Federal Cases Related to Attempt Offenses to Possess Drugs with the Intent to Distribute

"The invariably elusive nature of what constitutes an 'attempt' has long been the subject of judicial chagrin. 'Eminent judges have been puzzled where to draw the line, or even to state the principle on which it should be drawn . . . .'" *United States v. Dworken*, 855 F.2d 12, 16 (1st Cir. 1988) (omission in original) (citing O.W. Holmes, Jr., *The Common Law* 68 (1881)). "A more recent commentator has characterized the law of attempts as 'a complete obstacle to intelligible judicial speech and an encumbrance on intelligent judicial action.'" *Id. (*citing T. Arnold, *Criminal Attempts -- The Rise and Fall of an Abstraction*, 40 YALE L.J. 53, 79 (1940)). Several federal circuits have addressed the elements of attempt related to possession with the intent to distribute a controlled substance.

Related to the specific intent required with attempt offenses, the *Dworken* court stated that "[i]n keeping with the principles of the Model Penal Code, it hold[s] that liability should attach if the defendant reasonably believed that the conditions would obtain." 855 F.2d at 19.

In order to constitute a substantial step leading to attempt liability, the *Dworken* court further opined that "an actor's behavior must be 'of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute.'" *Id.* (citing *United States v. Rivera-Sola*, 713 F.2d 866, 870 (1st Cir. 1983); quoting *United States v. Manley*, 632 F.2d 978, 988 (2d Cir. 1980))."

The United States Court of Appeals for the Seventh Circuit, in *United States v. Cea*, noted that "when a defendant has been active in negotiating a drug transaction *and has actually taken physical steps to obtain possession of the drug*, the attempt offense is complete." 914 F.2d 881, 888 (7th Cir. 1990) (emphasis added); *see also United States v. Williams*, 704 F.2d 315, 321 (6th Cir. 1983) (where the appellant discussed the possibility of buying cocaine, and arrived at the seller's house with money); *United States v. Cafaro*, 480 F. Supp. 511, 515 (S.D.N.Y. 1979) (where defendant had telephone conversations discussing bringing money to the seller's apartment that evening to complete the sale and the defendant traveled to the apartment with the money and was arrested in the lobby).

## B. Analysis

We begin the "invariably elusive" analysis of Appellant's attempt offense by noting the narrowness of our conclusion. Nothing in this opinion should be read to say that in a different case the facts could never constitute multiple complete attempts. However, on the whole, specific to this Appellant and his case, we conclude that the facts as plead establish only one attempt to possess some amount of LSD with the intent to distribute that LSD to his Airmen friends.

### 1. Appellant's Specific Intent

The contested issue here requires evidence in the record showing two or more occasions where Appellant attempted to possess LSD and, *inter alia,* on each of the attempted possessions proof Appellant specifically intended to possess the LSD with the intent to distribute. Our review of the record reveals the answer to the number of attempts completed by Appellant could simply be found when reviewing the evidence of Appellant's specific intent to distribute. Using the Model Penal Code language, we ask whether Appellant "reasonably believed that the conditions would obtain" as he ordered the drugs online from Canada to be delivered to him in Texas to distribute to his Airmen friends. *Dworken*, 855 F.2d at 19.

The facts show Appellant formed one specific intent to distribute LSD to his friends on one occasion. Specifically, Appellant asked his Airmen friends *one time* if they wanted him to order ten tablets of LSD online from a Canadian company. The Airmen agreed to this plan, and paid Appellant some amount of money *one time* for *one delivery* of the Canadian LSD tablets. These facts also show Appellant "reasonably believed the conditions would obtain" *one possession* of LSD with the simultaneous intent to distribute the LSD to these Airmen once. *Dworken*, 855 F.2d at 19. We emphasize that we find no evidence in Appellant's record of trial to support the position that Appellant specifically intended to possess some amount of LSD *on divers occasions*, that is, on two or more occasions, and that he had *divers* specific intents to distribute LSD.

### 2. Appellant's Attempt to Possess

Looking beyond evidence of Appellant's single specific intent, most of the confusion in this case arises in analyzing which act or acts by Appellant were "mere preparation" towards the commission of the offense and which were "overt" enough to complete an attempt. The Government and the military judge believe Appellant's initial attempt was complete when Appellant received money from his friends with the agreement to return with LSD, and then ordered and paid for the LSD online. We acknowledge that some federal case law has found that intense negotiations over drug exchanges, or the exchange of money alone, can in some circumstances be acts overt enough to complete an attempt to possess drugs with the intent to distribute.[6] For reasons stated below, we need not decide if an attempted possession with the intent to distribute was completed upon the payment of money in this case, because if it was, there is still not evidence of a second completed attempt.

Assuming for a moment the full payment of money between Appellant and the Canadian company online is what completed Appellant's first attempt to possess LSD, a similar exchange of money is notably absent in the second alleged attempt. Instead, when Appellant contacted the Canadian company after his package went missing, Appellant told the military judge that he was "just

---

[6] *See, e.g.*, *United States v. Johnson*, 767 F.2d 673, 675 (10th Cir. 1985) (omissions in original) (citations omitted) (holding "[d]efendant's payment of money to purchase a controlled substance is undisputed. The jury had before it adequate evidence to find that defendant took '(a) substantial step . . . strongly corroborative of the firmness of (his) . . . criminal intent,'" and further stated, when referring to *United States v. Mandujano*, 499 F2d 370, 379 (5th Cir. 1974), "[c]ertainly, . . . the jury could have found the transfer of money strongly corroborative of the firmness of Mandujano's intent to complete the crime"); *see also United States v. Rivero*, 532 F.2d 450, 455 (5th Cir. 1976) (holding defendant gave a sample of cocaine to a prospective buyer, offered jewelry for collateral on a down-payment, and agreed on a price, bringing this transaction "to a final curtain call").

trying to get [his] purchase of the LSD that [he] first ordered." Of course, the exchange of money is not required to complete any attempt, but we highlight the absence of money exchanging in the second alleged attempt to show money cannot, in this instance, be inferred to have started or completed a second attempt to possess.[7] Simply put, Appellant was still just trying to get the one shipment of drugs he ordered and did not pay for more drugs.

Still, it appears the Government wants us to transfer evidence of the prior money exchange between Appellant and the Canadian company to prove Appellant's alleged second attempt to possess LSD. We decline to do so. Of course, there could be a case where facts could overlap and be relevant to and create two separate attempts from the same actor, but this is not that case. Absent facts from Appellant's first attempt, we fail to see any evidence of a second completed attempt to possess with the requisite intent. All of the verbs used to describe what Appellant did on the alleged second attempt, "reship," "resend" and "trying to get what he first ordered" do nothing to support the theory of a second, separate criminal endeavor to get a second shipment of LSD for a second distribution. The military judge and the Government seem to imply Appellant's "act of reaching out to the company" was the same act as placing a new order. Under some facts that could be the case—but finishing the sentence of what Appellant was doing in this case illuminates the error—Appellant was reaching out to the company *to inquire about his single, original order*. As such, we see this as not a new act requesting a new order and continue to see a dearth of evidence of acts to generate and distribute a second batch of LSD. [8]

Without persuasive authority, the Government also relies heavily on the fact that some period elapsed between Appellant's contact with the company and the first and second package shipping, perhaps several weeks. Considered in isolation, the amount of time elapsed during a criminal endeavor is not dispositive on the amount of Appellant's criminal culpability. Our review of attempt cases shows one attempt can span several weeks, and other attempts

---

[7] Also absent from the alleged second attempt is evidence more money was exchanged between Appellant and his would-be customers, which would be relevant to a second specific intent analysis.

[8] We note again that the stipulation of fact in this case has no information about two or more attempts related to the facts of Appellant's case. Read alone, it does nothing to help the Government's argument on appeal as this theory of liability is not supported and arguably contradicted by the bare-bones signed stipulation alluding to Appellant's one act.

complete nearly instantaneously.[9] While we acknowledge time can be a factor in considering Appellant's actions, time alone does nothing to distinguish between where one crime ends and another begins, if at all.

We are also not swayed by the fact that two packages containing LSD were shipped from the Canadian company to Appellant during this time. The number of packages the Canadian company distributed with LSD to satisfy their one purchase agreement with Appellant are facts more relevant to the company's own criminal culpability, if any. In short, in this case we are convinced Appellant made one purchase order, even if the Canadian company sent two shipments to fulfill the one order.

We maintain that the best theory of a completed attempt in this case, and the theory which we affirm today, is the one alleged by Appellant on appeal— that Appellant's attempt to possess LSD started with ordering it online, then continued as he exchanged money and physically went to receive the package once it arrived in Texas.[10] We hold that the totality of Appellant's actions constituted, in this case, one attempt to possess wherein Appellant had the specific intent to distribute LSD one time to his friends and then arranged with a Canadian company to ship one box of LSD to him in Texas. This is consistent with case law related to both the required specific intent and overt act of Appellant including payment and physical movement toward the purchase. *See, e.g., Cea*, 914 F.2d at 888; *United States v. Williams*, 704 F.2d at 321; *Cafaro*, 480 F. Supp. at 515. Therefore, we concluded the military judge abused his discretion in upholding Appellant's plea to attempting to possess LSD with the intent to distribute on divers occasions.

Finally, we acknowledge this "invariably elusive" analysis needs to be viewed through the appropriate level of deference and analyzed for an abuse of discretion, not just a difference of opinion. After all,

> [a]n abuse of discretion involves far more than a difference in judicial opinion . . . . The challenged action must . . . be found to be "arbitrary, fanciful, clearly unreasonable," or "clearly erroneous" in order to be invalidated on appeal. If, on the other hand,

---

[9] *See, e.g., Dworken,* 855 F.2d at 14 (where the one attempt to possess with the intent to distribute constituted planning which spanned from February through the second week in March); *United States v. Jones*, 2003 U.S. Dist. LEXIS 9933, at *20 (E.D. Pa. 10 Jun. 2003) (discussing instantaneous attempts occur in carjackings where the demand for the car and intent align instantly).

[10] Even under the Government's theory that the attempt was complete upon payment, the record does not support an additional completed attempt and instead supports our conclusion to uphold Appellant's plea for a single attempt.

reasonable [minds] could differ as to its propriety, then it cannot be said that the trial judge abused his discretion.

*United States v. Rhodes,* 61 M.J. 445, 457 (C.A.A.F. 2005) (Crawford, J., concurring in part and dissenting in part) (second alteration and omissions in original) (citing *United States v. Glenn*, 473 F.2d 191, 196 (D.C. Cir. 1972)).

Even given this standard, we maintain there is no reasonable way to interpret these facts and this Appellant as having completed two attempts for the underlying offense. An important factor in coming to this conclusion given the standard of review is our review of the stipulation of fact in this case. Under the section detailing elements of the offense for Charge I and its Specification, the stipulation failed to detail or reference the same theory of the case the Government attempts to advance now. Instead, the stipulation described a *single* overt act by Appellant spanning the entire charged timeframe and nothing about two attempts.[11] Reading the *Care* inquiry and other evidence in light of this stipulation, we find upholding the two-attempt theory would create a "substantial conflict" between the stipulation and other evidence in the case. *Watson*, 71 M.J. at 58. Therefore, we find the military judge abused his discretion in so accepting the two-attempt theory and instead uphold only one completed attempt as detailed above.

## C. Findings Modification and Sentence Reassessment

We conclude that based on the record before us, we can affirm the finding of guilty to the specification by exceptions. *See English,* 79 M.J. at 122 n.5 (where CCAs may affirm a conviction by exceptions and substitutions when it narrows the finding on appeal); *United States v. Hale*, 77 M.J. 598, 607 (A.F. Ct. Crim. App. 2018), *aff'd*, 78 M.J. 268 (C.A.A.F. 2019) (Article 66(d), UCMJ, provides service CCAs the authority to make exceptions and substitutions to the findings on appeal, "so long as [they] do not amend a finding on a theory not presented to the trier of fact" (citations omitted)). To do so, we except the words "on divers occasions" from the Specification of Charge I.

To be clear, we modify and affirm only so much of the finding of guilty of the Specification of Charge I that finds Appellant:

did, at or near San Antonio, Texas, between on or about 1 February 2024 and on or about 1 July 2024, attempt to possess an unknown quantity of Lysergic Acid Diethylamide (LSD) with the intent to distribute said controlled substance.

---

[11] We note the word "divers" appears once in this section, but its single use is not consistent with the remainder of the facts alleged, which describe one attempt.

Having excepted the words "on divers occasions," we now look to see if we should reassess the sentence. This court has "broad discretion" first to decide whether to reassess a sentence, and then to arrive at a reassessed sentence. *United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013). We may reassess a sentence only if we are able to reliably determine that, absent the error, the sentence would have been "at least of a certain magnitude." *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000) (citing *United States v. Jones*, 39 M.J. 315, 317 (C.M.A. 1994)).

Our review is guided by the following *Winckelmann* factors: (1) whether there has been a dramatic change in the penalty landscape or exposure; (2) whether sentencing was by members or a military judge alone; (3) whether the nature of the remaining offenses captures the gravamen of criminal conduct included within the original offenses and whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses; and (4) whether the remaining offenses are of the type with which appellate judges should have the experience and familiarity to reliably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15–16. These factors are "illustrative, but not dispositive, points of analysis" to be considered as part of "the totality of the circumstances presented." *Id.* at 15.

Applying the *Winckelmann* principles to the totality of the circumstances, we are confident we can reassess Appellant's sentence. Given the nature of Appellant's remaining convictions, we are confident that Appellant would have received the same sentence as originally adjudged: a sentence of at least a bad-conduct discharge and confinement for 90 days.

## III. CONCLUSION

The words "on divers occasions" are excepted from the Specification of Charge I, and the excepted words are **SET ASIDE**. We reassess the sentence to a bad-conduct discharge and confinement for 90 days. The findings, as modified, are correct in law, and the sentence, as reassessed, is correct in law and fact, and no other error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

Accordingly, the findings, as modified, and sentence, as reassessed, are **AF-FIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court